UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SCHOOL SPECIALTY, INC.,

    Plaintiff,

  v.    Civil Action No. 1:12-cv-01034

RR DONNELLEY & SONS COMPANY,

    Defendant.

---

## COMPLAINT

Plaintiff School Specialty, Inc. ("SSI"), by and through its attorneys, Godfrey & Kahn, S.C., brings the following Complaint against defendant RR Donnelley & Sons Company ("RRD"):

### NATURE OF THE CASE

1.    This is an action to recover damages for RRD's breach of contract and breach of warranty relating to a contract for printing services. SSI contracted with RRD for the printing of signatures and inserts – two important components of agendas that SSI manufactured and sold. RRD did not perform the printing properly, and the signatures and inserts RRD delivered to SSI contained excess ink and associated chemicals. When SSI assembled the signatures and inserts into the final agenda product, the excess ink and associated chemicals caused the agenda covers to curl unacceptably. SSI was forced to fix or reprint millions of agenda covers, and it incurred over $1,000,000 in damages as a result of the defective signatures and inserts produced by RRD.

## THE PARTIES

2. Plaintiff SSI is a corporation organized and incorporated under the laws of the State of Wisconsin, with its principal place of business at W6316 Design Drive, Greenville, Wisconsin, 54942.

3. Defendant RR Donnelley & Sons Company is a corporation organized under the laws of the State of Delaware, with its principal place of business at 111 South Wacker Drive, Chicago, Illinois 60606.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest or costs, and is between citizens of different States.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Premier's claims occurred in this judicial district. In particular, a substantial part of the defective products was produced by RRD in this judicial district.

## FACTUAL BACKGROUND

6. SSI produces and sells a wide variety of educational products for students and teachers throughout the United States and internationally. Among SSI's products are a variety of agendas tailored to the needs of students and teachers.

7. Two of the primary components of SSI's agendas are "signatures" and "inserts," which consist of paper that is first printed with appropriate content, then folded, trimmed, and bound into the final agenda product.

8. On November 8, 2010, SSI (through its wholly-owned subsidiary, Premier Agendas, Inc.) issued a Request for Quote ("RFQ") for producing, storing, and shipping signatures and inserts for SSI's 2011 agendas. The RFQ included specifications for, among other things, production, materials, packaging, labeling, shipping, inventory management, and invoicing.

9. RRD, among other printers, responded to the RFQ with bids for the work specified in the RFQ.

10. SSI awarded a portion of the 2011 signature and insert printing work to RRD, subject to the terms of the specifications detailed in the RFQ.

11. SSI provided RRD with samples of previously produced, fully assembled agendas, including signatures and inserts, further establishing the specifications required for RRD's signatures and inserts to conform to the parties' agreement.

12. Between February 2011 and May 2011, SSI issued a series of purchase orders ("POs") to RRD, releasing RRD to perform the work awarded to RRD and specifying delivery dates for the signatures and inserts. These POs were pursuant to the previously submitted specifications detailed in the RFQ

13. RRD printed and delivered a substantial number of signatures and inserts to SSI in or around May 2011.

14. In or around May 2011, SSI and/or its contractors assembled the signatures and inserts from RRD into the final agenda products.

15. In or around late May 2011, SSI discovered that the covers on agendas that had RRD signatures and inserts were curling unacceptably. Substantially all of the agendas that had RRD signatures and inserts experienced this curling cover problem.

16. In contrast, covers on agendas that contained signatures and inserts from printers other than RRD did not curl.

17. As confirmed by independent laboratory testing, the curling covers were caused by excess ink and associated chemicals, including volatile organic compounds (VOCs), released by the RRD signatures and inserts. The RRD signatures and inserts had excess ink and associated chemicals because, among other reasons, they were improperly heated during the printing and drying process.

18. In conference calls with SSI management in early June 2011, RRD management (including Vice President Candice Harold) informed SSI that RRD had determined that RRD had been improperly heating the signatures and inserts during printing and drying, causing the signatures and inserts to retain excess amounts of ink and harmful chemicals, including VOCs.

19. Because SSI had to deliver agendas to its customers in time for the school season, there was insufficient time to have RRD reprint all of the defective signatures and inserts. In early June 2011, SSI determined that the only feasible course of action was to re-print the portion of the signatures and inserts that were most defective, and to double-coat agenda covers so that they would resist the curling caused by the remaining defective RRD signatures and inserts.

20. Accordingly, SSI was forced to incur substantial costs relating to, among other things: paying another printer to re-print some signatures and inserts, removing the covers from agendas that had already been bound, adding a double coat to some existing covers, discarding covers that were beyond repair, ordering additional double-coated covers (which are more

expensive than the single-coated covers that are typical in the industry), and re-binding agendas to include the double-coated covers.

21. The defective signatures and inserts produced by RRD also forced SSI to incur substantial costs in purchasing and holding inventory far in excess of normal levels and redirecting SSI personnel and assets to redress the curling cover issue.

22. SSI informed RRD management of the actions it was taking to redress the curling cover problem, and RRD management concurred in the course of action selected by SSI.

23. RRD management, including Candice Harold, initially agreed to reimburse SSI for out-of-pocket expenses associated with correcting the curling cover problem. Eventually, RRD refused to reimburse SSI for its losses, and RRD has ignored SSI's further requests for reimbursement.

24. SSI paid RRD in full for the signatures and inserts delivered to SSI.

**FIRST CAUSE OF ACTION**
**Breach of Contract**

25. Paragraphs 1 through 24 of this Complaint are incorporated here by reference.

26. SSI and RRD entered into a valid and enforceable contract for the provision of printed signatures and inserts with certain specifications (included in the RFQ, the POs, and the samples) to be used in SSI's agendas.

27. RRD breached the contract by delivering to SSI signatures and inserts that were in a non-conforming and unusable condition.

28. SSI notified RRD of the non-conforming, unusable signatures and inserts within a reasonable time after discovering the nonconformity. RRD was unable to cure the defects timely and cost-effectively.

5

29. Due to RRD's breach, SSI incurred substantial and proximate damages in correcting the problems that the defective signatures and inserts caused to the covers of SSI's agendas. Such damages included incidental and consequential damages which RRD at the time of contracting had reason to know would occur and which could not reasonably have been prevented by acquiring substitute goods or otherwise.

30. RRD was notified of and concurred in the reasonable course of action taken by SSI to correct the problems caused by RRD's defective signatures and inserts.

## SECOND CAUSE OF ACTION
### Breach of Express Warranty (Wis. Stat. § 402.13)

31. Paragraphs 1 through 28 of this Complaint are incorporated here by reference.

32. RRD had the opportunity to examine final SSI agenda products with typical, non-curling covers, which, together with the RFQ and PO, established the specifications for the products printed by RRD. These sample agendas included printed signatures and inserts.

33. These sample agendas, the RFQ, and the POs were made part of the basis of the bargain and created an express warranty that all of the signatures and inserts printed by RRD would conform to those specifications and would not cause the agenda covers to curl.

34. RRD breached its express warranty by delivering to SSI defective signatures and inserts that caused the agenda covers to curl.

35. SSI notified RRD of the non-conforming signatures and inserts within a reasonable time after discovering the nonconformity. RRD was unable to cure the defects timely and cost-effectively.

36. Due to RRD's breach, SSI incurred substantial and proximate damages in correcting the problems that the defective signatures and inserts caused to the covers of SSI's

agendas. Such damages included incidental and consequential damages which RRD at the time of contracting had reason to know would occur and which could not reasonably have been prevented by acquiring substitute goods or otherwise.

37. RRD was notified of and concurred in the reasonable course of action taken by SSI to correct the problems caused by RRD's defective signatures and inserts.

### THIRD CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability (Wis. Stat. § 402.314)

38. Paragraphs 1 through 33 of this Complaint are incorporated here by reference.

39. RRD is a merchant with respect to the signatures and inserts delivered to SSI.

40. The defective signatures and inserts, which contained excess amounts of ink and associated chemicals and caused the agenda covers to curl, breached the implied warranty of merchantability because, among other reasons:

(a) They would not pass without objection in the trade, in that trade participants would reject signatures that cause covers to curl;

(b) They were not of fair average quality, in that average quality signatures and inserts would not cause covers to curl; and

(c) They were not fit for the ordinary purposes for which such goods are used, in that signatures and inserts are expected to be fit to bind together with covers.

41. RRD breached its implied warranty of merchantability by delivering to SSI unmerchantable signatures and inserts that caused the covers to curl.

42. SSI notified RRD of the non-conforming signatures and inserts within a reasonable time after discovering the nonconformity. RRD it was unable to cure the defects timely and cost-effectively.

43. Due to RRD's breach, SSI incurred substantial and proximate damages in correcting the problems that the defective signatures and inserts caused to the covers of SSI's agendas. Such damages included incidental and consequential damages which RRD at the time of contracting had reason to know would occur and which could not reasonably have been prevented by acquiring substitute goods or otherwise.

44. RRD was notified of and concurred in the reasonable course of action taken by SSI to correct the problems caused by RRD's defective signatures and inserts.

## FOURTH CAUSE OF ACTION
**Breach of Implied Warranty of Fitness for a Particular Purpose (Wis. Stat. § 402.315)**

45. Paragraphs 1 through 38 of this Complaint are incorporated here by reference.

46. At the time of contracting, RRD had reason to know that SSI intended to use the signatures and inserts for a particular purpose (i.e., to assemble into agendas) because, among other reasons, SSI specified in the RFQ and the POs that they would be used for agendas, and RRD examined sample agendas provided by SSI.

47. SSI was relying on RRD's skill and judgment to furnish signatures and inserts suitable for assembly into agendas.

48. RRD breached its implied warranty of fitness for a particular purpose by delivering to SSI signatures and inserts that were not fit for incorporation into SSI's agendas.

49. SSI notified RRD of the non-conforming signatures and inserts within a reasonable time after discovering the nonconformity. RRD was unable to cure the defects timely and cost-effectively.

50. Due to RRD's breach, SSI incurred substantial and proximate damages in correcting the problems that the defective signatures and inserts caused to the covers of SSI's

agendas.  Such damages included incidental and consequential damages which RRD at the time of contracting had reason to know would occur and which could not reasonably have been prevented by acquiring substitute goods or otherwise.

51.     RRD was notified of and concurred in the reasonable course of action taken by SSI to correct the problems caused by RRD's defective signatures and inserts.

**WHEREFORE**, Plaintiff School Specialty, Inc. requests the following relief:

1.     Judgment in favor SSI assessing damages against RRD in an amount in excess of $1 million.

2.     Judgment against RRD in favor of SSI for reasonable costs and attorneys' fees.

3.     Judgment against RRD in favor of SSI for pre-judgment interest.

4.     Any other relief this Court may deem appropriate.

## JURY DEMAND

In accordance with Federal Rule of Civil Procedure 38, School Specialty, Inc. hereby demands a trial by jury in this action.

Dated: October 10, 2012.

                          Respectfully submitted,

                          By:    /**s/**  James A. Friedman
                                James A. Friedman, State Bar No. 1020756
                                Matthew T. Kemp, State Bar No. 1080009
                                GODFREY & KAHN, S.C.
                                One East Main Street, Suite 500
                                Post Office Box 2719
                                Madison, WI 53701-2719
                                Phone: 608-257-3911
                                Fax:    608-257-0609
                                Email: jfriedman@gklaw.com
                                          mkemp@gklaw.com

                                *Attorneys for Plaintiff School Specialty, Inc.*

8551492_1